# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01658-COA

**PAIGE ELECTRIC COMPANY**                                                    **APPELLANT**

v.

**DAVIS & FEDER, P.A.**                                                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/30/2015 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | BLEWETT W. THOMAS |
| ATTORNEYS FOR APPELLEE: | JAMES GRADY WYLY III KYLE STUART MORAN ADAM BLAKE HARRIS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | DENIED APPELLANT'S MOTION TO DECLARE ARBITRATION CLAUSE INVALID, AND ALTERNATIVELY, TO SEVER STATUTORY LIEN CLAIMS FOR TRIAL; AND DENIED MOTION TO VACATE THE ARBITRATION AWARD, DISMISSING APPELLANT'S CLAIMS WITH PREJUDICE; AND GRANTED APPELLEE'S MOTION TO CONFIRM ARBITRATOR'S AWARD |
| DISPOSITION: | AFFIRMED - 04/11/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND FAIR, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.    Paige Electric Company (Paige Electric) filed a malpractice suit against Davis & Feder P.A., claiming the firm mishandled its legal claims and committed malpractice. Because the retainer agreement between the parties contained an arbitration clause, the case

was submitted to an arbitrator, who issued an award in favor of Davis & Feder and denied Paige Electric any relief.

¶2.	Paige Electric filed motions in the First Judicial District of Harrison County Circuit Court to declare the arbitration clause void and to vacate the arbitration award. The circuit court denied the motions, dismissing Paige Electric's claims with prejudice. Paige Electric now appeals, claiming the circuit court erred in finding that Paige Electric waived any objection to the arbitration clause by voluntarily participating in the arbitration. Paige Electric also asserts that the arbitration award in favor of Davis & Feder should be vacated, as the arbitrator exceeded his authority in violation of Mississippi Code Annotated section 11-15-23(d) (Rev. 2004) and 9 United States Code section 10(a)(4) (2012).

¶3.	Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶4.	After Hurricane Katrina hit the Mississippi Gulf Coast in 2005, Southern Construction Services Inc. (SCS) hired Paige Electric as a subcontractor to provide electrical contracting on all of SCS's projects. Paige Electric's owner, Jerry Paige, was also hired by SCS as its general supervisor due to his certification in building construction and electrical contracting.

¶5.	When SCS failed to pay Paige Electric for its services on its last project, Studio Inn, Paige Electric hired Davis & Feder to handle its claim to collect the unpaid balance of $271,364.22. The Retainer Agreement, entered into on March 19, 2007, contained an arbitration clause, which stated:

> This provision regarding arbitration of disputes shall apply to any dispute between the parties which arises from, or is related to, a claimed breach of this

2

agreement, the professional legal services rendered by Davis & Feder, P.A. or any claim for legal and or professional malpractice, or any claim or disagreement between the parties of any kind, nature, type or description regardless of the facts or the legal theories which may be involved or asserted. . . . You are specifically agreeing to waive your right to a trial by jury regarding any claims or disputes you may have arising from this Agreement.

The associate attorney who worked on the case, David Brisolara, pursued two separate claims against SCS on Paige Electric's behalf: (1) the collection of the unpaid balance; and (2) a lien pursuant to Mississippi Code Annotated section 85-7-181 (Rev. 1999) against Studio Inn's owner, Hancock Hotels.[1] Although Brisolara filed a notice of construction lien with the Harrison County Chancery Clerk on March 21, 2007, no suit was filed regarding the construction lien. Brisolara was successful in obtaining a default judgment of $271,364.22 against SCS on November 7, 2007, but as SCS was insolvent at this point, efforts to collect the judgment were unsuccessful. Brisolara left Davis & Feder at the end of 2008, and the law firm terminated its representation of Paige Electric in January 2009.

¶6.    It was not until March 2013 that Jerry Paige discovered that no lien had been placed on Hancock Hotels' property. On January 16, 2014, Paige Electric filed a malpractice suit against Davis & Feder, asserting that the firm should have "done more" to collect the company's claims against SCS. Davis & Feder moved to dismiss the complaint. On June 9, 2014, the circuit court entered an agreed order referring the case to arbitration.

---

[1] Section 85-7-181 provides a statutory remedy under which a subcontractor could file a stop notice against an owner if the subcontractor supplied materials or labor for a construction project and was not paid by the general contractor. This statute was later held to be unconstitutional and was repealed in 2014. *See Noatex Corp. v. King Constr. of Houston LLC*, 732 F.3d 479, 482 (5th Cir. 2013) (affirming the district court's determination that Mississippi's stop notice statute, section 85-7-181, "is facially unconstitutional").

¶7.     The parties agreed to the appointment of William Larry Latham as both arbitrator and special master for purposes of presiding over third-party discovery. Following discovery, a three-day arbitration hearing was held on May 27-29, 2015, with both parties presenting expert testimony. On July 23, 2015, the arbitrator published his award, dismissing with prejudice all claims against Davis & Feder. As the parties agreed to a short form order, there were no findings of fact or conclusions of law.

¶8.     Davis & Feder subsequently filed a motion with the circuit court to confirm the award and enter a final judgment. Aggrieved, Paige Electric moved the circuit court to vacate the award as beyond the scope of the arbitration agreement and for "grounds enumerated in both Miss. Code Ann. § 11-15-23(a-d) and 9 U.S.C. § 10(a)(1-4)." Paige Electric also filed a motion to declare the arbitration clause invalid, or in the alternative, to sever the claims involving the lien from the agreement and set those claims for trial. On October 30, 2015, the circuit court held a hearing on the parties' motions. Finding that Paige Electric "waived any objection [it] may have had with regard to the arbitration of the lien claims," and that a "[c]hallenge to the arbitration clause . . .should have been made . . . prior to the referral for arbitration," the court denied Paige Electric's motion to invalidate the arbitration clause, or alternatively, to sever the statutory lien claims for trial. The circuit judge also denied Paige Electric's motion to vacate the award, finding nothing in the record to indicate the arbitrator "exceeded his powers or . . . flouted the law." The court granted Davis & Feder's motion for entry of judgment, entered an order confirming the arbitrator's award, and dismissed Paige Electric's claims with prejudice.

¶9.    On appeal, we find no error and affirm.

**STANDARD OF REVIEW**

¶10.    "In arbitration cases, . . . the scope of review is extremely limited." *Wilson v. Greyhound Bus Lines Inc.*, 830 So. 2d 1151, 1155 (¶9) (Miss. 2002). "The scope of judicial review of an arbitration award is quite narrow, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings." *Id*. (quoting *Craig v. Barber, 524 So. 2d 974, 977 (Miss. 1988)).

**DISCUSSION**

    I.    **Whether the circuit court erred in denying Paige Electric's motion to declare the arbitration clause invalid, or alternatively, to sever the lien claims from the arbitration award and set those claims for trial.**[2]

¶11.    Addressing Paige Electric's claim that the arbitration clause in the retainer agreement was unconscionable, and its alternative claim the malpractice claims involving the lien should be severed from the arbitration award and set for trial, the circuit court concluded that the company had waived any objection, as it had voluntarily consented to the arbitration.

¶12.    Mississippi has not addressed the precise issue of whether a challenge to the validity of an arbitration clause may be brought post-arbitration. But other jurisdictions have held that participation in arbitration proceedings waives the right to object to an arbitrator's authority. "A party cannot 'sit silent, wait until an adverse award is issued, and then first argue that the arbitrator did not have the authority even to hear the claim.'" *Advocate Fin.*

---

       [2] For clarity of discussion, we have combined Issues I and II from the appellant's brief.

*Grp. v. Poulos*, 8 N.E.3d 598, 609 (¶53) (Ill. App. Ct. 2014) (quoting *First Health Grp. v. Ruddick*, 911 N.E.2d 1201, 1213 (Ill. App. Ct. 2009)); *see also Ahluwalia v. QFA Royalties LLC*, 226 P.3d 1093, 1098 (Colo. App. 2009) ("If a party willingly allows an issue to be submitted to arbitration, it cannot await the outcome and later argue that the arbitrator lacked authority to decide the matter."). "[W]illing participation is consent to the arbitrator's power to resolve the dispute." *Unite Here Local 23 v. I.L. Creations of Maryland Inc.*, 148 F. Supp. 3d 12, 19 (D.D.C. 2015). "Given that arbitration is an optional *alternative* to judicial resolution of disputes[,] . . . when the parties have agreed to arbitration, the law discourages the loser from seeking a second de novo (or even quasi-de novo) shot at obtaining its desired result[.]" *Id*. at 18-19.

¶13.    Paige Electric argues that because there was a "separate contract prepared for lien claims against the hotel" produced on February 25, 2015, during discovery, "Paige Electric cannot be considered to have consented to arbitration," and it "cannot be bound to any agreement to arbitrate the dispute over the lien claims[.]"[3] The circuit court judge declined to make any findings "whether there was a second contract or not," because the lien claims were submitted for arbitration and had been decided by the arbitrator. But the court did observe that the "second contract . . . was known to Paige Electric in February by [its] own pleadings, and at that time [it] had fully the ability to say. . . these liens aren't included." The

---

[3] The second "contract" was merely handwritten notes made by Brisolara on a legal pad, dated March 16, 2007, three days prior to the parties' signing the retainer agreement. The note has Jerry Paige's name at the top, and simply states "Hourly pay for lien. [One-third] for suit" and that Jerry Paige "wants to sign contract against [SCS *and*] Studio Inn and file suit." There is no evidence that Paige Electric signed a second contract for the lien work at an hourly rate; nor is there evidence Davis & Feder billed Paige Electric for this work.

judge concluded:

> [It] didn't do that.  What [it] did do, however, was go through the entire arbitration process, two and a half days of arbitration hearings, and then submit a post-hearing memorandum . . . [that] very clearly indicates the lien claims were considered and are part of the arbitration.
>
> . . . .
>
> And, therefore, the court finds [Paige Electric] waived any objection [it] may have had with regard to the arbitration of the lien claims.  Whether the court agrees they would have been included or not, the parties agreed to include them, the arbitrator was presented those.

¶14.    At no point prior to or during the arbitration hearing did Paige Electric object to arbitrating the lien claims.  Paige Electric was represented by counsel throughout this process, and the parties agreed to arbitration; it was not court-ordered.  In a letter to Davis & Feder, dated June 12, 2013, counsel for Paige Electric stated that "[t]here is no objection to this [arbitration] procedure," and he requested that "appropriate steps be taken at this time to arrange for arbitration of this claim[.]"  Thus, we find no error in the circuit court's determination that Paige Electric waived its right to object to the validity of the arbitration clause and to the arbitration of the lien claims.

¶15.    Notwithstanding the waiver of the claims, we find no merit to Paige Electric's claim that the arbitration clause was procedurally unconscionable because the arbitration clause was not properly explained to Jerry Paige, and because the clause is "inconspicuous" and used "overly broad verbiage."  Whether an arbitration clause is procedurally unconscionable can be shown by: "(1) lack of knowledge; (2) lack of voluntariness; (3) inconspicuous print; (4) the use of complex, legalistic language; (5) disparity in sophistication or bargaining

7

power of the parties; and/or (6) lack of opportunity to study the contract and inquire about the terms." *See Caplin Enters. Inc. v. Arrington*, 145 So. 3d 608, 614 (¶12) (Miss. 2014) (citing *MS Credit Ctr. Inc. v. Horton,* 926 So. 2d 167, 177 (¶29) (Miss. 2006)).

¶16. The retainer agreement was a simply-worded five-page agreement, and the arbitration clause took up an entire page of the contract, in an easy-to-read font. *Compare E. Ford Inc. v. Taylor*, 826 So. 2d 709, 716-17 (¶21) (Miss. 2002) (finding an arbitration provision "procedurally unconscionable," as the "preprinted" arbitration clause "appears less than one-third the size of many other terms in the document, [and] appears in very fine print and regular type font"). Moreover, in the June 12, 2013 letter from Paige Electric's counsel to Davis & Feder, the attorney stated that "[Jerry] Paige advises me that his contract with Davis [&] Feder requires all disputes with clients be arbitrated," indicating an understanding by Jerry Paige of the agreement's terms and conditions.

¶17. We also reject, on the merits, Paige Electric's alternative claim that the arbitration clause only applied to the representation for the claim against SCS for payment, not the claims related to the "prosecution of any liens or related claims against Hancock Hotels," and that "the malpractice claims related to the hotel owner should be severed and set for trial before a jury." Paige Electric cites *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F. 2d 752, 754-55 (5th Cir. 1993), to support its claim. However, the retainer agreement states that the provision regarding the arbitration of disputes "shall apply to any dispute between the parties *which arises from, or is related to, a claimed breach of this agreement*[.]" (Emphasis added). In *Hornbeck*, the United States Court of Appeals for the Fifth Circuit

8

specifically held that "arbitration clauses containing the 'any dispute' language . . . are of the broad type." *Id*. at 755. "[I]t is difficult to imagine broader general language than that contained in the arbitration clause, 'any dispute.'" *Id*. (citation omitted). The Mississippi Supreme Court has also held:

> Broad arbitration language governs disputes "related to" or "connected with" a contract, and narrow arbitration language requires arbitration of disputes that directly "arise out of" a contract. . . . Because broad arbitration language is capable of expansive reach, courts have held that "it is only necessary that the dispute touch matters covered by the contract to be arbitrable."

*Horton*, 926 So. 2d at 176 (¶¶24-25) (quoting *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067-68 (5th Cir.1998)). We find the lien claim against the hotel owner was directly "related to" Paige Electric's claims against SCS; the lien against the hotel owner was necessary only in the event that Paige Electric could not collect a judgment from SCS.

¶18. Accordingly, we find the circuit court did not err in denying Paige Electric's motion to declare the arbitration clause invalid, or alternatively, to sever Paige Electric's lien claims from the arbitration award and set those claims for trial.

## II. Whether the circuit court committed reversible error by denying Paige Electric's motion to vacate the arbitration award.

¶19. Paige Electric argues that the award should be vacated as Davis & Feder were negligent as a matter of law, and therefore, the arbitrator disregarded the evidence and exceeded the scope of his authority. The United States Supreme Court has held that in reviewing whether an issue is arbitrable, "considerable leeway [should be given] to the arbitrator" and his or her decision should be set aside "only in certain narrow circumstances."

9

*First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

> Errors of law or fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly and honestly made. Nothing in the award relative to the merits of the controversy as submitted, however wrongly decided, is ground for setting aside an award in the absence of fraud, misconduct or other valid objections.

*Wilson*, 830 So. 2d at 1156 (¶12) (quoting *Hutto v. Jordan*, 204 Miss. 30, 36, 36 So. 2d 809, 811 (1948)).

¶20. "[J]udicial review of arbitration award is narrowly limited, and a motion to vacate, modify, or correct an arbitration award is not an opportunity to relitigate issues decided in the arbitration." *City of Hattiesburg v. Precision Constr. LLC*, 192 So. 3d 1089, 1096 (¶27) (Miss. Ct. App. 2016). Mississippi Code Annotated section 11-15-23 (Rev. 2004) provides the four grounds upon which an arbitrator's decision may be vacated:

> (a)     That such award was procured by corruption, fraud, or undue means;

> (b)     That there was evident partiality or corruption on the part of the arbitrators, or any one of them;

> (c)     That the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent or material to the controversy, or other misbehavior by which the rights of the party shall have been prejudiced;

> (d)     That the arbitrators exceeded their powers, or that they so imperfectly executed them that a mutual, final, and definite award on the subject matter was not made.

"In Mississippi, we have always considered 'undue means' to constitute some nefarious conduct on the part of the arbitrator – not simply an incorrect or sloppy conclusion of law." *Robinson v. Henne*, 115 So. 3d 797, 802 (¶17) (Miss. 2013) (citing *McClendon v. Stewart,*

10

133 Miss. 253, 258, 97 So. 547 (1923)). The Mississippi Supreme Court has held: "[A] mistake of law, a mistake of fact, or a decision lacking an evidentiary basis is insufficient to constitute a violation of any of the four statutory categories that permit the vacatur of an arbitrator's decision." *Id*. at 803 (¶19).

¶21. The circuit judge found that the arbitrator did not exceed his powers in this instance. She further concluded there was "nothing in this record to indicate that Mr. Latham refused or failed to review the case law, nothing to indicate he had any preconceived notions or opinions and certainly nothing to indicate what evidence he focused on or didn't focus on." We find no error in the circuit court's holding. Giving a reasonable presumption "in favor of the validity of arbitration proceedings," we affirm the circuit court's judgment.

¶22. **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY, FIRST JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**